# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | |
|---|---|
| **TRAVIS GIBSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 1:10 CV 107 LMB** |
| ) | |
| **RICK COOK, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

Plaintiff has filed this multi-count action against nine defendants alleging that his

constitutional rights were violated when he was arrested and incarcerated without probable cause.

Plaintiff asserts claims under 42 U.S.C. § 1983, and various state claims. This cause was

originally filed in the Circuit Court of Stoddard County, Missouri, and was ultimately removed to

this court pursuant to the court's diversity jurisdiction. This case has been assigned to the

undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being

heard by consent of the parties. See 28 U.S.C. § 636(c).

Presently pending before the court are the following motions for summary judgment:

(1) Defendant Briney Welborn's Motion for Summary Judgment (Doc. No. 53); (2) Motion for

Summary Judgment of Defendants Rick Cook, Josh Benton, Jeff Mitchell and the City of Dexter,

Missouri (Doc. No. 58); (3) Motion for Summary Judgment of Defendants Carl Hefner and

Tommy Horton (Doc. No. 61); and (4) Defendants Roxanne Cook and Catherine Rice's Motion

for Summary Judgment (Doc. No. 67). Also pending are Defendant Catherine Rice's Motion to

Exclude the Testimony of Plaintiff's Expert Joel Schwartz (Doc. No. 69); Plaintiff's Motion to

Strike Certain Paragraphs of Defendants Rick Cook, Josh Benton, Jeff Mitchell, The City of Dexter, Missouri, Carl Hefner and Tommy Horton's Material Facts, or In the Alternative, Plaintiff's Objections to Said Paragraphs (Doc. No. 80); Plaintiff's Motion to Strike Certain Paragraphs of the Statement of Uncontroverted Facts of Defendant Joe Briney Welborn (Doc. No. 83); and Defendants Roxanne Cook and Catherine Rice's Motion to Strike Affidavit of Plaintiff Travis Gibson (Doc. No. 104). All pending motions have been fully briefed.

## Background[1]

Plaintiff, Travis Gibson, married Ann Gibson in 1994. On June 13, 2007, Dexter Police officers were called to Ann Gibson's place of employment because someone reported that plaintiff had been requested to leave the store and refused to do so. Dexter officers placed plaintiff under arrest, and plaintiff was charged with peace disturbance and second degree trespassing.

On July 12, 2007, Ann Gibson filed an Adult Abuse/Stalking Petition for Order of Protection in Stoddard County Circuit Court requesting the court to enter an order restraining plaintiff from abusing, threatening to abuse, molesting or disturbing the peace of Ann Gibson; from stalking Ann Gibson; from entering Ann Gibson's dwelling; and from communicating with Ann Gibson in any manner. On July 12, 2007, the Circuit Court of Stoddard County, Missouri entered an ex parte Order of Protection restraining plaintiff from abusing, threatening to abuse, molesting or disturbing the peace of Ann Gibson wherever she may be found; from entering or staying upon the premises wherever Ann Gibson may reside, located at 10428 County Road 639

---

[1]The court's summary of the facts is derived from the statements of undisputed material facts and the evidentiary record submitted by the parties. The court will cite to specific exhibits when necessary. In certain instances, the parties filed the same exhibits. The court will cite to only one of the exhibits for purposes of judicial efficiency.

A, Dexter, MO; and from communicating with Ann Gibson in any manner.

On July 23, 2007, the Circuit Court of Stoddard County, Missouri entered a Full Order of Protection in favor of Ann Gibson, and directed to plaintiff. In the Full Order of Protection, the Circuit Court of Stoddard County ordered that: plaintiff be restrained from any contact with Ann Gibson; plaintiff shall not abuse, threaten to abuse, molest, stalk or disturb the peace of Ann Gibson, wherever she may be found; plaintiff shall not communicate with Ann Gibson in any manner or through any medium; and plaintiff shall not enter or stay upon the premises of wherever Ann Gibson may reside. The Full Order of Protection stated: "Located at 10428 County Road 639 A, Dexter, Mo."

On August 5, 2007, the Stoddard County Sheriff's Department responded to Ann Gibson's residence pursuant to a report that plaintiff was at Ann Gibson's residence and was violating the Full Order of Protection. On August 11, 2007, the Stoddard County Sheriff's Department was again called to Ann Gibson's residence in response to a report that plaintiff was there violating the Full Order of Protection.

On November 17, 2007, the Stoddard County Circuit Court entered a judgment and decree of legal separation between plaintiff and Ann Gibson. The decree of legal separation included a parenting plan for the child of plaintiff and Ann Gibson.

On January 10, 2008, Dexter Police officers responded to Ann Gibson's place of employment after another employee saw plaintiff in the parking lot and requested an officer be present due to previous problems between plaintiff and Ann Gibson. Upon arriving at Ann Gibson's place of employment on January 10, 2008, Defendant Jeff Mitchell, a law enforcement officer employed by the Dexter Police Department, observed plaintiff talking to Ann Gibson in the

parking lot.  After confirming the existence of the active Full Order of Protection, Officer Mitchell placed plaintiff under arrest for violating it.

On the morning of January 12, 2008, Officers Jeff Mitchell and Anthony Roberts of the Dexter Police responded to Ann Gibson's residence located at 311 N. Mulberry Street, Apt. 2, Dexter, Missouri 63841, after a 911 caller reported that a domestic disturbance had occurred. Upon arriving, Officer Roberts observed plaintiff and Ann Gibson talking inside Ann Gibson's residence.  Plaintiff was permitted to leave Ann Gibson's residence after Ann Gibson informed Officer Roberts that plaintiff was there pursuant to the parenting plan entered November 17, 2007, to exchange custody of the child.

Later on January 12, 2008, plaintiff again went to Ann Gibson's apartment.  Officers Roberts and Mitchell were again dispatched to Ann Gibson's residence for a report of a domestic disturbance.  When Officers Roberts and Mitchell returned to Ann Gibson's apartment, they observed plaintiff down on one knee inside Ann Gibson's residence, talking to Ann Gibson.  Ann Gibson showed Officer Roberts a copy of the Full Order of Protection.  Ann Gibson informed Officer Roberts she had instructed plaintiff to leave several times and he refused to do so.[2] Officer Roberts believed this was a disturbance of Ann Gibson's peace, and made the decision to arrest plaintiff.

On February 25, 2008, plaintiff appeared in the Circuit Court of Stoddard County and entered a plea of guilty on the misdemeanor charge of violating the Full Order of Protection. Plaintiff received a suspended imposition of sentence with twelve months of probation.  Plaintiff's

---

[2]Plaintiff claims that he was not asked by Ann Gibson to leave her residence.  See Plaintiff's Statement of Additional Uncontroverted Material Facts, ¶ 5.

probation order included a condition that he not contact Ann Gibson.

On April 9, 2008, the Dexter Police were again called to respond to Ann Gibson's residence because a peace disturbance involving plaintiff was reported by Ann Gibson's daughter. Dexter Police Officers Josh Benton and Rick Cook were dispatched to Ann Gibson's residence and plaintiff was again arrested for violating the Full Order of Protection by Officer Benton. Plaintiff admitted that he had had an argument with Ann Gibson in the communal parking lot of Ann Gibson's apartment complex, but claimed that it was because he believed she had been drinking and driving.

Plaintiff was subsequently charged with violating an order of protection, a class D felony, in the Circuit Court of Stoddard County, case no. 08-SD-CR00792-1. On May 7, 2008, plaintiff, through his counsel, Defendant Catherine Rice, entered a plea of guilty to the felony charge of violating an order of protection. As a result of the guilty plea, plaintiff was given a suspended sentence and five years supervised probation. Among the conditions of plaintiff's probation was that he have no contact with Ann Gibson.

On May 11, 2008, plaintiff contacted Ann Gibson and left her a voicemail. On May 15, 2008, plaintiff met with his probation officer, Defendant Roxanne Cook, and admitted having contacted Ann on May 11, 2008. Roxanne Cook attempted to explain to plaintiff during the May 15, 2008 meeting that his contact with Ann violated the conditions of his probation, but plaintiff refused to listen. Roxanne Cook is duly authorized to issue arrest warrants for probation violations. Roxanne Cook believed plaintiff had violated his probation by contacting Ann Gibson and believed plaintiff would continue to contact Ann Gibson in violation of his probation. Roxanne Cook contacted the Dexter Police and Officer Rick Cook responded, and arrested

plaintiff pursuant to the warrant issued by Roxanne Cook.

On May 23, 2008, Defendant Welborn filed a motion for probation revocation. In July 2008, Defendant Rice made arrangements with Defendant Welborn and the trial court such that plaintiff could be released to the custody of his pastor and go to Victory Acres, a faith-based rehabilitation center, rather than having his probation revoked. While at Victory Acres, plaintiff continued to have contact with Ann Gibson by telephone. Defendant Welborn thereafter filed a motion for revocation of plaintiff's probation.

On August 20, 2008, the Circuit Court of Stoddard County entered an order revoking plaintiff's probation and, at plaintiff's request, sentenced him to three years in the Missouri Department of Corrections ("MDOC"). On August 22, 2008, plaintiff was placed in the custody of the Missouri Department of Corrections.

While in the custody of the MDOC, plaintiff filed a Motion to Withdraw his plea of guilty to the felony charge of violating an order of protection in Stoddard County case no. 08-SD-CR00792-1. Scott Thompson, an attorney in the Missouri Appellate Defender's Office, was appointed to act as plaintiff's counsel, and filed an amended motion to withdraw plaintiff's guilty plea on November 9, 2009. On December 1, 2009, the MDOC transferred plaintiff to the custody of the Stoddard County Sheriff's Department so that plaintiff could attend the hearing on this motion to withdraw the guilty plea. The paperwork the Sheriff's Department received from the MDOC instructed that plaintiff was to be returned to MDOC custody regardless of the outcome of his hearing. At the hearing, Circuit Court of Stoddard County Judge Scott Thomsen granted plaintiff's motion and ordered his release.

Immediately after Judge Thomsen ordered plaintiff's release on December 1, 2009,

Defendant Tommy Horton, a Stoddard County Deputy Sheriff, approached the bench and advised Judge Thomsen that he did not believe he could release plaintiff due to the fact that plaintiff "belonged" to the MDOC, and not the Stoddard County Sheriff's Department. Judge Thomsen agreed that the MDOC should be contacted prior to plaintiff's release. Deputy Horton took plaintiff back to the Stoddard County Jail.

Deputy Horton communicated with the MDOC regarding the order to release plaintiff, and was informed that the State of Louisiana had placed a "detain and hold" on plaintiff due to charges pending in Tangipahoah Parish, Louisiana. As a result of the "detain and hold" from Louisiana, the MDOC specifically instructed the Stoddard County Sheriff's Department to hold plaintiff on the Louisiana warrant. The MDOC advised Deputy Horton that they would take plaintiff back into custody on December 3, 2008, pending extradition to Louisiana.

On December 2, 2009, the MDOC informed Deputy Horton that the State of Louisiana had lifted its hold on plaintiff, and advised Deputy Horton that plaintiff should be released. Plaintiff was released on December 2, 2009.

In this action, plaintiff alleges claims under 42 U.S.C. § 1983 ("§ 1983") for Deprivation of Civil Rights against Defendants Mitchell (Count I), Welborn (Counts III and XIII), Benton (Count IV), Rick Cook (Count IV), City of Dexter (Count VI), Roxanne Cook (Count VIII), Rice (Count XI), Horton (Count XIII), and Hefner (Count XIII);[3] for False Arrest against Defendants Mitchell (Count II), Benton (Count V), Rick Cook (Counts V and X), and Roxanne Cook (Count IX); and for negligence against Defendants City of Dexter (Count VII), and Rice

_____

[3]Plaintiff's §1983 claims are based upon alleged deprivation of his Fourth Amendment and Fourteenth Amendment rights under the Constitution.

(Count XII).

## SUMMARY JUDGMENT STANDARD

The court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

## **DISCUSSION**

### I.     **Defendant Briney Welborn's Motion for Summary Judgment (Doc. No. 53)**

Plaintiff asserts two § 1983 claims against Defendant Welborn.  In Count III, plaintiff alleges that on January 12, 2008, Defendant Welborn instructed officers of the Dexter Police Department to arrest plaintiff without probable cause, and faxed an unsigned warrant to the Dexter Police Department, in violation of plaintiff's Fourth Amendment rights.  In Count XIII, plaintiff alleges that on December 1, 2009, Defendant Welborn instructed members of the Stoddard County Sheriff's Department to arrest plaintiff despite a court order that plaintiff be released from custody in violation of his Fourth Amendment rights.  In addition, plaintiff alleges a state law false arrest claim in Count XIV.

In his Motion for Summary Judgment, Defendant Welborn argues that he is entitled to summary judgment because the evidence adduced during discovery does not support the factual allegations of the Complaint upon which the liability of Defendant Welborn is asserted. Defendant Welborn further argues that he is entitled to judgment as a matter of law based on the doctrines of absolute prosecutorial immunity and qualified immunity.

In his Response to Defendant Welborn's Motion for Summary Judgment, plaintiff states "[b]ased upon information obtained through discovery undersigned counsel can cite no authority to overcome Defendant Welborn's claim of absolute immunity from claims arising from prosecutorial functions."  (Doc. No. 82, p. 2).

"[I]n initiating a prosecution and in presenting the State's case, the prosecutor is [absolutely] immune from a civil suit for damages under § 1983." Imbler v. Pachtman, 424 U.S. 409, 431 (1976). Absolute immunity "does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." Imbler, 424 U.S. at 429. Prosecutors are only entitled to absolute immunity "when the prosecutor performs distinctly prosecutorial functions." McGhee v. Pottawattamie County, 547 F.3d 922, 933 (8th Cir. 2008). For example, absolute immunity does not apply when a prosecutor violated a person's rights by "obtaining, manufacturing, coercing and fabricating evidence *before* filing formal charges, because this is not 'a distinctively prosecutorial function.'" Id. Additionally, prosecutors do not enjoy absolute immunity when they perform administrative or investigative functions. Brodnicki v. City of Omaha, 75 F.3d 1261, 1266 (8th Cir. 1996).

In this lawsuit, plaintiff has failed to present any evidence that Defendant Welborn violated his rights while performing administrative or investigative activities. Plaintiff concedes that the doctrine of absolute immunity applies. As a result, the court finds that Defendant Welborn enjoys absolute immunity and is entitled to summary judgment on plaintiff's § 1983 claims.

Plaintiff's Motion to Strike Certain Paragraphs of the Statement of Uncontroverted Facts (Doc. No. 83) of Defendant Joe Briney Welborn will be denied as moot, as the court did not consider the uncontroverted facts at issue.

## II. Motion for Summary Judgment of Defendants Rick Cook, Josh Benton, Jeff Mitchell and the City of Dexter, Missouri (Doc. No. 58)

In Count I, plaintiff asserts a claim against Defendant Mitchell pursuant to § 1983**,** alleging that Defendant Mitchell violated plaintiff's Fourth Amendment rights in arresting him without

probable cause on January 12, 2008. Plaintiff alleges a state law action for false arrest against Defendant Mitchell in Count II. In Count IV, plaintiff asserts a § 1983 action against Defendants Benton and Cook, alleging that Officers Benton and Cook violated his Fourth Amendment rights in arresting him without probable cause on April 9, 2008. Plaintiff alleges a state law false arrest action against Defendants Benton and Cook in Count V. In Count VI, plaintiff alleges a § 1983 claim against Defendant the City of Dexter, alleging that the City of Dexter failed to train and supervise its officers and dispatchers. Plaintiff asserts a state law negligence claim against the City of Dexter in Count VII. Finally, in Count X, plaintiff asserts a state law false arrest claim against Defendant Cook, alleging that Defendant Cook arrested plaintiff on May 15, 2008 without probable cause. Plaintiff seeks to recover damages from the individual officer defendants acting in their official and individual capacities.

In their Motion for Summary Judgment, defendants argue that Officers Mitchell, Benton, and Cook are entitled to qualified immunity in their individual capacities on plaintiff's § 1983 claims because the undisputed facts demonstrate that plaintiff's constitutional rights were not violated, and because the law was not clearly established and their conduct was reasonable under the circumstances. Defendants also contend that they are entitled to summary judgment on the merits of plaintiff's constitutional claims because the undisputed facts clearly establish that defendants did not violate plaintiff's constitutional rights. Defendants argue that Officers Mitchell, Benton, and Cook are entitled to summary judgment on the constitutional claims asserted against them in their official capacities because there was no underlying violation of plaintiff's constitutional rights and plaintiff has not produced any admissible facts that establish that the actions of Officers Mitchell, Benton, and Cook were the result of any custom and practice

of the City of Dexter.  Defendants contend that plaintiff's claims against the City of Dexter for

failure to supervise and train also fail for the same reason.  Finally, defendants argue that

plaintiff's negligence claim against the City of Dexter is barred by the doctrine of sovereign

immunity.

As an initial matter, the court notes that plaintiff has filed a Motion to Strike Certain

Paragraphs of Defendants Rick Cook, Josh Benton, Jeff Mitchell, the City of Dexter, Missouri,

Carl Hefner and Tommy Horton's Material Facts,[4] or In the Alternative, Plaintiff's Objections to

Said Paragraphs (Doc. No. 80).  "A party may object that the material cited to support or dispute

a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P.

56(c)(2).  Plaintiff's objections fall in to four different categories: (1) relevancy; (2) hearsay; and

(3) testimony of Judge Scott Thomsen; and (4) conclusions of law.  The court will address

plaintiff's objections accordingly.

Plaintiff objects to paragraphs 7, 8, 16, 17, and 19, on the basis of relevancy.  In these

paragraphs, defendants refer to interactions between plaintiff and law enforcement which occurred

prior to January 12, 2008.  The undersigned finds that these paragraphs are relevant to the

probable cause determinations concerning the incidents at issue in this action.

Plaintiff next objects to paragraphs 16, 17, 18, 19, 22, 26, 29, 41, and 45 on the basis of

hearsay.  These paragraphs refer to information obtained by third parties, including Ann Gibson

and her daughter, as well as unidentified 911 callers.  Plaintiff states that Ms. Gibson refused to

answer questions at deposition and her daughter was never deposed.  The undersigned finds that

---

[4]Defendants Mitchell, Benton, Cook, the City of Dexter, Carl Hefner, and Tommy Horton
filed a Joint Statement of Uncontroverted Material Facts, but have filed two separate motions and
memoranda of law.

these paragraphs are not being used to prove the truth of the matter asserted but, rather, they are being used as evidence of the information available to the Dexter officers when they made their probable cause determinations. Thus, this evidence is not hearsay. Further, even if these statements are considered hearsay, "officials may rely on hearsay statements to determine that probable cause exists." Carpenter v. Gage, 686 F.3d 644, 649 (8th Cir. 2012) (citing Illinois v. Gates, 462 U.S. 213, 241-42 (1983)).

Plaintiff objects to paragraphs 69, 74, 75, 76, and 81, which contain allegations of fact from the deposition of Judge Scott Thomsen. Plaintiff contends that these paragraphs constitute legal conclusions stated by the judge. Plaintiff also argues that these paragraphs contain the opinions of Judge Thomsen on certain issues, and that Judge Thomsen was never disclosed as an expert witness by the parties.

Judge Thomsen presided over plaintiff's motion to withdraw his guilty plea. Judge Thomsen granted plaintiff's motion and set aside plaintiff's conviction. Paragraph 69 cites deposition testimony of Judge Thomsen in which he explains the reasoning for his decision. Thus, paragraph 69 constitutes facts relevant to this case and not inadmissable opinion evidence. Likewise, paragraph 76 cites deposition testimony in which Judge Thomsen explains the meaning of his ruling when he ordered plaintiff to be "released."

In paragraphs 74 and 75, defendants cite deposition testimony of Judge Thomsen wherein Judge Thomsen is asked to respond to hypothetical scenarios. The court did not consider this evidence. Thus, plaintiff's objections to paragraphs 74 and 75 are moot.

Finally, plaintiff objects to paragraph 113 as a legal conclusion. Paragraph 113 states "The City of Dexter does not have a policy, custom or practice of arresting suspects without

probable cause." For the reasons discussed below in Section II(B), the court did not consider this evidence. Thus, plaintiff's objection to paragraph 113 is moot.

Accordingly, plaintiff's motion to strike (Doc. No. 80) will be denied.

**A.    Plaintiff's § 1983 Claims Against Defendants Cook, Benton, and Mitchell**

Defendants contend that Officers Cook, Benton, and Mitchell are entitled to qualified immunity as well as summary judgment on the merits of plaintiff's § 1983 claims because the undisputed facts establish that there was no violation of plaintiff's constitutional rights.

Section 1983 provides a cause of action for a person who is injured as a result of being deprived of "any rights, privileges, or immunities secured by the Constitution" by a person acting under "color of state law. 42 U.S.C. § 1983.

**Qualified Immunity**

Qualified immunity shields public officials "from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009) (citing Hope v. Pelzer, 536 U.S. 730, 739 (2002)); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Stepnes v. Ritschel, 663 F.3d 952, 960 (8th Cir. 2011)). To overcome a defendant's qualified immunity claim, the plaintiff must show that: "'(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional . . . right; and (2) the right was clearly established at the time of the deprivation.'" Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010) (quoting Howard v. Kansas City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009)); Stepnes, 663 F.3d at 960. "The law is clearly established if it gives the defendant officials 'fair warning' that their conduct violated an individual's rights when

the officials acted." <u>Forrester v. Bass</u>, 397 F.3d 1047, 1054 (8th Cir. 2005) (citing <u>Hope</u>, 536 U.S. at 739-40 (2002)). <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987) (A right is "clearly established" if "a reasonable official would understand that what he is doing violates that right."). If a state official violates a clearly established constitutional right, he is not entitled to qualified immunity. <u>Harlow</u>, 457 U.S. at 818-19.

Qualified immunity allows "officers to make reasonable errors," <u>Habiger v. City of Fargo</u>, 80 F.3d 289, 295 (8th Cir. 1996), and provides "ample room for mistaken judgments." <u>Malley v. Briggs</u>, 475 U.S. 335, 343 (1986). "The defense protects public officials unless they are 'plainly incompetent' or 'knowingly violate the law.'" <u>Borgman v. Kedley</u>, 646 F.3d 518, 522 (8th Cir. 2011) (quoting 518, <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991)) (citation omitted).

**Fourth Amendment**

"'It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments.'" <u>Marksmeier v. Davie</u>, 622 F.3d 896, 900 (8th Cir. 2010) (quoting <u>Hannah v. City of Overland, Mo.</u>, 795 F.2d 1385, 1389 (8th Cir. 1986)). "An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" <u>Borgman</u>, 646 F.3d at 523 (quoting <u>Fisher v. Wal-Mart Stores, Inc.</u>, 619 F.3d 811, 816 (8th Cir. 2010)). Whether the police had probable cause at the time of an arrest is a question of law for a court to decide. <u>Fisher</u>, 619 F.3d at 816; <u>Peterson v. City of Plymouth</u>, 60 F.3d 469, 475 (8th Cir. 1995). "As probable cause is determined at the moment the arrest was made, any later developed facts are irrelevant to the probable cause analysis for an arrest." <u>Amrine v. Brooks</u>, 522 F.3d 823, 832 (8th

Cir. 2008).

Plaintiff alleges that the arrests on January 12, 2008, and April 9, 2008 violated his Fourth Amendment rights. The undersigned will discuss each incident separately, beginning with plaintiff's claims against the officers in their individual capacities.

**1.      January 12, 2008 Arrest by Officer Mitchell**

Plaintiff was arrested by Officer Mitchell on January 12, 2008, for violating the Full Order of Protection. Thus, the relevant inquiry is whether Officer Mitchell had probable cause to believe plaintiff had committed an offense on January 12, 2008.

On the morning of January 12, 2008, Officers Jeff Mitchell and Anthony Roberts of the Dexter Police responded to Ann Gibson's residence located at 311 N. Mulberry Street, Apt. 2, Dexter, Missouri 63841, after a 911 caller reported that a domestic disturbance had occurred. Plaintiff was permitted to leave Ann Gibson's residence after Ann Gibson informed Officer Roberts that plaintiff was there pursuant to the parenting plan entered November 17, 2007, to exchange custody of their child.

Later on January 12, 2008, Officers Roberts and Mitchell were again dispatched to Ann Gibson's residence after Ms. Gibson's daughter reported that plaintiff was back at Ms. Gibson's residence and was yelling. (Def's Ex. A, p. 34, Ex. N at 13, 34). When Officers Roberts and Mitchell returned to Ann Gibson's apartment, they observed plaintiff down on one knee inside Ann Gibson's residence, talking to Ann Gibson. Ann Gibson showed Officer Roberts a copy of the Full Order of Protection, which did not mention anything regarding custody. Ann Gibson informed Officer Roberts she had instructed plaintiff to leave several times and he refused to do so.

The Full Order of Protection entered by the Circuit Court of Stoddard County, Missouri on July 23, 2007 ordered that plaintiff: "be restrained from committing further acts of abuse or threats of abuse," "be restrained from any contact with [Ann Gibson]," "shall not abuse, threaten to abuse, molest, stalk or disturb the peace of [Ann Gibson] wherever [she] may be found," "shall not communicate with [Ann Gibson] in any manner or through any medium," and "shall not enter or stay upon the premises of wherever [Ann Gibson] may reside." The Full Order of Protection listed Ann Gibson's address as: 10428 Co. Rd. 639A, Dexter, Mo. (Def's Ex. L). Officer Roberts believed that plaintiff had disturbed Ann Gibson's peace in violation of the Full Order of Protection. (Def's Ex. N, p. 40). Officer Roberts and Officer Mitchell both believed they had probable cause to arrest plaintiff for violating the Full Order of Protection. (Def's Ex. N, pp. 16, 39; Ex. A, pp. 42-44; Ex. N).

Plaintiff argues that Officer Mitchell did not have probable cause to arrest plaintiff for violating the Full Order of Protection because a decree of legal separation had been issued, which affected the applicability of the Full Order of Protection. Plaintiff argues that he informed Officer Mitchell when he first arrived at Ann Gibson's residence on January 12, 2008 that the couple was legally separated with a court-ordered custody arrangement. Plaintiff contends that he explained to Officer Mitchell that the legal separation affected the applicability of the Order of Protection pursuant to Section 455.060.4 when he responded to Ann Gibson's residence the second time.[5] Plaintiff did not show the officers a copy of the decree of legal separation.

Plaintiff relies on RSMo § 455.060, which provides in relevant part:

4. All provisions of an order of protection shall terminate upon entry of a decree of

_____

[5]Defendants dispute that plaintiff mentioned Section 455.060.4 during his arrest.

dissolution of marriage or legal separation except as to those provisions which require the respondent to participate in a court-approved counseling program or enjoin the respondent from abusing, molesting, stalking or disturbing the peace of the petitioner and which enjoin the respondent from entering the premises of the dwelling unit of the petitioner as described in the order of protection when the petitioner continues to reside in that dwelling unit unless the respondent is awarded possession of the dwelling unit pursuant to a decree of dissolution of marriage or legal separation.

RSMo § 455.060.4.

Defendants argue that certain provisions of the Full Order of Protection remained in effect, including the provision that enjoined plaintiff from abusing, threatening to abuse, molesting, stalking or disturbing the peace of Ann Gibson, wherever she may be found. Defendants contend that, while Ann Gibson was no longer living at the address listed on the Full Order of Protection, this was superfluous as the order enjoined plaintiff from entering Ms. Gibson's residence "wherever [she] may reside."

Plaintiff disputes that the provision of the Full Order of Protection enjoining plaintiff from entering Ms. Gibson's residence wherever she may reside was applicable after Ms. Gibson moved, due to the language of Section 455.060.4 prohibiting the respondent from entering the dwelling unit of the petitioner *as described in the order of protection*.  Plaintiff further argues that the statute establishing a violation of a full order of protection as a criminal offense does not include disturbing the peace as an element of the offense.  The relevant statute, RSMo § 455.085.8, provides as follows, in relevant part:

A violation of the terms and conditions, with regard to abuse, stalking, child custody, communication initiated by the respondent or entrance upon the premises of the petitioner's dwelling unit or place of employment or school, or being within a certain distance of the petitioner or a child of the petitioner, of a full order of protection shall be a class A misdemeanor.

RSMo § 455.085.8.

The undersigned finds that the record here indicates that Officer Mitchell had probable cause to arrest plaintiff on January 12, 2008. Officer Mitchell was aware of the Full Order of Protection because he had arrested plaintiff for violating the order on January 10, 2008 at Ms. Gibson's place of employment. Officers Roberts and Mitchell were dispatched to Ms. Gibson's residence on two occasions on January 10, 2008. On the first occasion, the officers left without arresting plaintiff after they were told that a custody order was in place and there was no problem. On the second occasion, however, Ms. Gibson's daughter reported that plaintiff had returned to Ms. Gibson's residence and was yelling at her mother. After the officers arrived, Ms. Gibson provided them with a copy of the Full Order of Protection, which did not address the subject of custody. The Full Order of Protection prohibited plaintiff from disturbing the peace of Ann Gibson, wherever she may be found, and from entering or staying upon the premises of Ms. Gibson, wherever she may reside. Ms. Gibson reported to the officers that she had asked plaintiff to leave several times and he refused to do so. Thus, Officer Mitchell had probable cause to arrest plaintiff for violating the Full Order of Protection based upon the report of Ms. Gibson's daughter, Ms. Gibson's accusation that plaintiff refused to leave despite being asked to on multiple occasions, and the known existence of the Full Order of Protection. See Borgman, 646 F.3d at 523 (quoting Fisher, 619 F.3d at 817)("Officers may 'rely on the veracity of information supplied by the victim of a crime. . . .'").

Plaintiff claims that, had the officers further investigated his claim that the Full Order of Protection was no longer valid, they would have known that he did not violate the Full Order of Protection and that they did not have probable cause to arrest him. As defendant points out, this

court[6] addressed a similar argument in <u>Sastry v. City of Crestwood</u>, 2011 WL 2938163 (E.D. Mo. July 19, 2011).  In <u>Sastry</u>, the plaintiff alleged that his arrests were made without probable cause because a domestic "Order of Protection" was not in effect at the time of the arrests.  <u>Id.</u> at * 2. The plaintiff argued that, had the arresting officers investigated his claim regarding the Order of Protection, they would have known that the Order of Protection had been cancelled and replaced by a civil court order.  The court rejected the plaintiff's argument, noting that "officers are not required to conduct a 'minitrial' before arrest..."  <u>Id.</u> at *12 (quoting <u>Fisher</u>, 619 F.3d at 817, and <u>Armine</u>, 522 F.3d at 832).  The court held that it was reasonable for the officers to find the victim's account of the events leading up to the plaintiff's arrests to be credible.  <u>Id.</u> at *13.  The court also found that it was reasonable for the officers to believe that a viable Order of Protection existed as this is what their own dispatcher told them, the victim provided copies of court orders which set out restrictions on the plaintiff's conduct toward the victim, and their own dispatch books had copies of these orders.  <u>Id.</u>

In this case, even if Officer Mitchell was mistaken in his belief that plaintiff had violated the Full Order of Protection, the facts available to Officer Mitchell at the time of the arrest were sufficient to lead a reasonable person to believe that the Full Order of Protection had been violated.  The fact that a person arrested is later found innocent is not material.  <u>Linn v. Garcia</u>, 531 F.2d 855, 861 (8th Cir. 1976).  Based on the totality of the circumstances, it was reasonable for Officer Mitchell to believe that plaintiff had violated the Full Order of Protection.

Further, even if Officer Mitchell did not have probable cause to arrest plaintiff for violating the Full Order of Protection, probable cause still existed for making the arrest.  Supreme Court

---

[6]The Honorable Stephen N. Limbaugh, Jr., United States District Judge.

"cases make it clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Devenpeck v. Alford, 543 U.S. 146, 593 (2004). "That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Devenpeck, 543 U.S. at 594. Thus, an officer may effect a warrantless arrest, even if there is no lawful basis for the actual charges brought, as long as there is probable cause to believe some criminal offense had been committed. McCabe v. Parker, et al., 608 F.3d 1068, 1077-78 (8th Cir. 2010). If an officer has probable cause to believe that an individual has committed even a minor criminal offense, a warrantless arrest may be made without violating the Fourth Amendment. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).

Here, the facts available to Officer Mitchell were sufficient to establish probable cause to believe plaintiff had committed a criminal offense. Plaintiff was found present on Ms. Gibson's property despite Ms. Gibson's reports that she had asked him to leave on multiple occasions, and Ms. Gibson's daughter reported that plaintiff was yelling. Officer Mitchell had arrested plaintiff just two days prior for violating the Full Order of Protection. Officer Mitchell was entitled to find the accounts of Ms. Gibson and her daughter of the events leading up to plaintiff's arrest credible. Based on these facts available to Officer Mitchell, it was reasonable to believe plaintiff had committed a criminal offense, such as disturbance of the peace in violation of RSMo § 574.010,[7]

_____

[7]A person commits the crime of peace disturbance if: (1) He unreasonably and knowingly disturbs or alarms another person or persons by: (a) *Loud noise;* or (b) Offensive language addressed in a face-to-face manner to a specific individual and uttered under circumstances which are likely to produce an in immediate violent response from a reasonable recipient; or (c) Threatening to commit a felonious act against any person under circumstances which are likely to cause a reasonable person to fear that such threat may be carried out; or (d) Fighting; or (e) Creating a noxious and offensive odor. RSMo § 574.010.1(1) (emphasis added).

or trespass in violation of RSMo § 569.140.[8]

Plaintiff also alleges a Fourth Amendment claim against Officer Mitchell in his official capacity. Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). To state a claim against a municipality or a government official in his or her official capacity, plaintiff must allege that a policy or custom of the government entity is responsible for the alleged constitutional violation. Monell v. Dep't of Social Services, 436 U.S. 658, 690-91 (1978).

In this case, the court has found that no constitutional violation occurred. Thus, Officer Mitchell is entitled to summary judgment on plaintiff's Fourth Amendment claim brought against him in his official capacity as well as his individual capacity.

**2.      April 9, 2008 Arrest by Officers Benton and Cook**

On April 9, 2008, the Dexter Police were again called to respond to Ann Gibson's residence after Ann Gibson's daughter reported that plaintiff was yelling at her mother. Dexter Police Officers Josh Benton and Rick Cook were dispatched to Ann Gibson's residence and plaintiff was arrested for violating the Full Order of Protection by Officer Benton.

After arriving on the scene, Ann Gibson reported to the officers that plaintiff had followed her to the parking lot of her apartment complex, parked next to her, started attacking her with questions regarding where she had been, and tried to kiss her several times but she pushed him away. (Def's Ex. B, p. 17; Ex. C, p. 28-29). Ms. Gibson reported that no child custody exchange

---

[8]A person commits the crime of trespass in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure or upon real property. RSMo § 569.140.1.

was scheduled to occur at that time.  (Id.).  Officer Benton called the Dexter Police Department dispatch and confirmed that the Full Order of Protection was valid.  (Def's Ex. C, p. 33).  Officers Benton and Cook believed plaintiff was disturbing Ann's Gibson's peace and was violating the Full Order of Protection.  (Def's Ex. B at p. 25, Ex. C at p. 33).  Plaintiff admitted that he had had an argument with Ann Gibson in the communal parking lot of Ann Gibson's apartment complex, but claimed that it was because he believed she had been drinking and driving.  (Def's Ex. H, p. 69).

   Plaintiff argues that the officers did not have probable cause to believe plaintiff committed a crime when they arrested him on April 9, 2008.  Plaintiff claims that he explained to the officers that he and his wife were legally separated and had a custody arrangement with regard to their son, and that plaintiff and his son were at Ann Gibson's apartment complex to obtain clothing for the son.   Plaintiff argues that the officers had no reason to believe plaintiff was abusing, molesting or stalking Ann Gibson in violation of the Full Order of Protection.  Plaintiff further argues that disturbing the peace of a specified person in violation of an order of protection is not a criminal offense under Missouri law.

   The undersigned finds that the undisputed facts reveal that Officers Benton and Cook had probable cause to believe plaintiff committed a crime when they arrested him on April 9, 2008.  The officers responded to Ann Gibson's residence after Ms. Gibson's daughter reported that plaintiff was yelling at her mother.  The officers were aware of the Full Order of Protection and confirmed with dispatch that it was active.  Ann Gibson reported that plaintiff had followed her home, parked next to her, attacked her with questions, tried to kiss her, and kept trying to grab her face.  The officers were entitled to find the accounts of Ms. Gibson and her daughter credible.

Under the totality of the circumstances, it was reasonable for Officers Benton and Cook to believe plaintiff had committed a crime. Even if plaintiff did not violate the Full Order of Protection, plaintiff's conduct meets the requirement of a peace disturbance under RSMo § 574.010.1. Consequently, the issue of whether plaintiff violated the Full Order of Protection has no bearing on whether plaintiff's arrest comported with the Fourth Amendment. See McCabe, 608 F.3d at 1077-78; Atwater, 532 U.S. at 354.

Thus, Officers Benton and Cook did not violate plaintiff's constitutional rights, and are entitled to summary judgment on plaintiff's § 1983 claim against them in their individual capacities. Officers Benton and Cook are also entitled to summary judgement on plaintiff's § 1983 claim against them in their official capacities because there was no underlying violation of plaintiff's Fourth Amendment rights.

Having found that Defendants Cook, Benton, and Mitchell are entitled to summary judgment on the merits of plaintiff's § 1983 claims, it is unnecessary to determine whether qualified immunity also applies.

**B.     Plaintiff's § 1983 Claims Against Defendant the City of Dexter**

In Count VI, plaintiff alleges that the City of Dexter failed to train and supervise its officers in violation of 42 U.S.C. § 1983. Plaintiff contends that it was the City of Dexter's failure to train and supervise its officers that led to the violation of plaintiff's constitutional rights when he was arrested without probable cause on January 18, 2008 and April 9, 2008.

The undersigned has determined that plaintiff's constitutional rights were not violated on January 18, 2008 or April 9, 2008 by defendants Mitchell, Benton, or Cook. In light of this finding, the City of Dexter cannot be found liable on plaintiff's claim that it failed to train and

supervise its officers.  See Moore v. City of Deslogе, Mo., 647 F.3d 841, 849 (8th Cir. 2011)

(municipal liability for failure to train or supervise cannot attach unless individual liability is first

found on underlying substantive claim).  Thus, the City of Dexter is entitled to summary judgment

on plaintiff's § 1983 claims for failure to supervise and train.

III.    **Motion for Summary Judgment of Defendants Carl Hefner and Tommy Horton (Doc. No. 61)**

In Count XIII, plaintiff asserts a claim against Defendants Horton and Hefner pursuant to

§ 1983, alleging that Defendants Horton and Hefner violated plaintiff's rights under the Fourth

Amendment and Fourteenth Amendment in arresting him without probable cause on December 1,

2009, and depriving him of his liberty without due process of law.  Plaintiff also alleges a state law

action for false arrest against Defendants Horton and Hefner in Count XIV.  Plaintiff seeks to

recover damages from the individual defendants acting in their official and individual capacities.

In their Motion for Summary Judgment, defendants argue that Defendants Horton and

Hefner are entitled to qualified immunity in their individual capacities on plaintiff's § 1983 claims

because the undisputed facts demonstrate that plaintiff's constitutional rights were not violated,

and because the law was not clearly established and their conduct was reasonable under the

circumstances.  Defendants also contend that they are entitled to summary judgment on the merits

of plaintiff's constitutional claims because the undisputed facts clearly establish that defendants

did not violate plaintiff's constitutional rights.  Defendants argue that Defendants Horton and

Hefner are entitled to summary judgment on the constitutional claims asserted against them in

their official capacities because there was no underlying violation of plaintiff's constitutional rights

and plaintiff has not produced any admissible facts that establish that the actions of Sheriff Hefner

and Deputy Horton were the result of any custom and practice of Stoddard County. Finally, defendants argue that plaintiff's false arrest claim is barred by the doctrine of official immunity and the public duty doctrine.

**Plaintiff's § 1983 Claims Against Defendants Hefner and Horton**

Plaintiff's claims against Sheriff Hefner and Deputy Horton arise from plaintiff's detention after the hearing in Stoddard County Circuit Court on his motion to withdraw his guilty plea on December 1, 2009. Specifically, plaintiff was detained in the Stoddard County Jail for approximately twenty-eight hours pending release to the Missouri DOC. Plaintiff claims that this detention violated his Fourth and Fourteenth Amendment rights.

While plaintiff alleged claims against Defendants Hefner and Horton in their individual and official capacities in his Complaint, plaintiff has not responded to defendants' argument that Sheriff Hefner and Deputy Horton are not liable in their official capacities. Thus, plaintiff has conceded that Defendants Hefner and Horton are not liable in their official capacities, and the undersigned will only address the liability of these defendants in their individual capacities.

Defendants argue that claims like those of plaintiff alleging the excessive detention of one who has established the right to be released should be analyzed under the Due Process Clause rather than the Fourth Amendment. Defendants cite <u>Goldberg v. Hennepin County</u>, 417 F.3d 808, 811 (8th Cir. 2005), in support of this position.

In his Response, plaintiff contends that defendants' reliance on <u>Goldberg</u> is misplaced. Plaintiff argues that this is not a situation where plaintiff was lawfully incarcerated and then held past his time of release but, rather, plaintiff was never lawfully arrested. Plaintiff contends that he was wrongfully detained in the Dexter Jail, the Stoddard County Jail, and the Missouri

- 26 -

Penitentiary. Plaintiff argues that defendants' conduct should, therefore, be evaluated under the Fourth Amendment.

The Eighth Circuit Court of Appeals has held that the excessive detention of one who has established the right to be released are typically analyzed under the Due Process Clause. See Goldberg, 417 F.3d at 811. The Court found that the Fourth Amendment does not provide the proper mode of analysis for claims alleging an unconstitutional detention resulting from an initially lawful arrest. Id.

The only detention period at issue in the Complaint is the approximately twenty-eight hours plaintiff was detained in the Stoddard County Jail on December 1, 2009, pending his release to the Missouri DOC. The undisputed facts reveal that plaintiff pled guilty to a felony violation of an order of protection on May 7, 2008. As a result of the guilty plea, plaintiff was given a suspended sentence and five years supervised probation. Plaintiff subsequently violated his probation, and on August 20, 2008, the Circuit Court of Stoddard County entered an order revoking plaintiff's probation and sentenced him to three years in the MDOC. On August 22, 2008, plaintiff was placed in the custody of the Missouri Department of Corrections.

Judge Scott Thomsen, the Bollinger County Associate Circuit Judge who presided over plaintiff's motion to withdraw his guilty plea, testified in a deposition that, in granting plaintiff's motion, he felt that there was a defect in the way that the charges were issued. (Def's Ex. p, p. 41). Judge Thomsen did not rule that the initial arrest was unlawful, that plaintiff's incarceration was unlawful, or that plaintiff did not commit a crime. (Id.).

Thus, despite plaintiff's allegations that his initial arrests were unlawful, plaintiff was lawfully incarcerated by the MDOC pursuant to a valid order and judgment of the Stoddard

County Circuit Court prior to the hearing on his motion to withdraw his guilty plea on December 1, 2009. Consequently, the constitutionality of the detention at issue must be analyzed under the Due Process Clause of the Fourteenth Amendment. See Goldberg, 417 F.3d at 811.

To avoid summary judgment, plaintiff must show that defendants were deliberately indifferent to his right to a timely release from his initially lawful detention. See id. "Deliberate indifference requires more than mere unreasonableness, namely conduct that is so knowingly hostile or indifferent to a clearly established constitutional right that it evidences a level of 'criminal recklessness.'" Lund v. Hennepin County, 427 F.3d 1123, 1127 (8th Cir. 2005) (quoting Goldberg, 417 F.3d at 812). To decide whether a defendant has been deliberately indifferent in a prolonged detention case, courts focus both on the length of the detention and the circumstances surrounding the delay. See Davis v. Hall, 375 F.3d 703, 718-19 (8th Cir. 2004).

In Goldberg, the Court held that the detention of an individual for ten hours after bail was posted did not violate the plaintiff's substantive due process rights because there was no evidence of deliberate indifference by any municipal employee to the plaintiff's right to be released. Id. at 810-12. See also Luckes v. County of Hennepin, 415 F.3d 936, 940 (8th Cir. 2005) (affirming summary judgment for County on detainee's claim that twenty-four hour booking and processing time at detention center following arrest violated substantive due process); Lund, 427 F.3d at 1127 (same, twelve hour processing procedures). Cf Davis v. Hall, 375 F.3d 703, 719 (8th Cir. 2004) (summary judgment denied when plaintiff was detained for fifty-seven days after a judge ordered his release).

In this case, at the December 1, 2009 hearing, Judge Thomsen granted plaintiff's motion and ordered his release. Immediately after Judge Thomsen ordered plaintiff's release, Deputy

Horton approached the bench and advised Judge Thomsen that he did not believe he could release plaintiff, due to the fact that plaintiff "belonged" to the MDOC and not the Stoddard County Sheriff's Department. The MDOC transferred plaintiff to the custody of the Stoddard County Sheriff's Department so that plaintiff could attend the hearing on his motion to withdraw the guilty plea. The paperwork the Sheriff's Department received from the MDOC expressly instructed that plaintiff was to be returned to MDOC custody regardless of the outcome of his hearing. (Def's Ex. M-5).

In his deposition on July 27, 2012, when asked whether he recalled having a conversation with Deputy Horton regarding what to do with plaintiff, Judge Thomsen testified that he stated as far as he knew plaintiff was free to go, yet he recalls someone indicating that plaintiff needed to "go back and get processed out." (Pl's Ex. P, p. 26). Judge Thomsen stated that he responded: "if that's what needs to be done." (Id.). Judge Thomsen testified that he would not dispute that he directed Deputy Horton to contact the MDOC prior to releasing plaintiff. (Id. at 27, 34). Deputy Horton took plaintiff back to the Stoddard County Jail pursuant to Judge Thomsen's instruction to seek guidance from the MDOC. (Def's Ex. E, p. 24). Deputy Horton informed Sheriff Carl Hefner of Judge Thomsen's instruction to seek guidance form MDOC regarding plaintiff's release. Judge Thomsen testified that, when he ordered plaintiff "released" on December 1, 2009, he meant that the Sheriff's Department was to no longer hold plaintiff on those charges, but he did not intend that the Sheriff's Department release plaintiff in the face of an instruction from the MDOC not to do so. (Id. at 35-36).

Deputy Horton communicated with the MDOC regarding the order to release plaintiff, and was informed that the State of Louisiana had placed a "detain and hold" on plaintiff due to

charges pending in Tangipahoah Parish, Louisiana. (Def's Ex. M-4). As a result of the "detain and hold" from Louisiana, the MDOC instructed the Stoddard County Sheriff's Department to hold plaintiff on the Louisiana warrant. The MDOC advised Deputy Horton that they would take plaintiff back into custody on December 3, 2008, pending extradition to Louisiana. On December 2, 2009, the MDOC informed Deputy Horton that the State of Louisiana had lifted its hold on plaintiff, and advised Deputy Horton that plaintiff should be released. (Def's Ex. M-6). Plaintiff was released on December 2, 2009.

Defendants contend that there is no evidence that Deputy Horton and Sheriff Hefner were deliberately indifferent. Rather, defendants argue that, given the totality of the circumstances the conduct of Defendants Horton and Hefner was reasonable. Defendants further argue that, pursuant to RSMo § 221.510.3, Deputy Horton was under a duty as a matter of law to not release plaintiff.

Section 221.510 requires sheriffs and jailers to conduct an inquiry of pending outstanding warrants for misdemeanors and felonies through the Missouri Uniform Law Enforcement System (MULES) and the National Crime Information Center (NCIC) System on all prisoners about to be released. RSMo § 221.510.1. Section 221.510 further provides that "[n]o prisoner, whether convicted of a crime or being held on suspicion of any charge, shall be released...prior to having a local, state or federal warrant check conducted." RSMo § 221.510.2. If a warrant check indicates outstanding charges or outstanding warrants from another jurisdiction, that prisoner "shall not be released" unless the issuing agency notifies the jail that the agency does not with the prisoner to be transferred or the warrant to be pursued. RSMo § 221.510.3.

The undersigned finds that plaintiff has failed to present evidence of deliberate indifference

by Deputy Horton or Sheriff Hefner to plaintiff's right to be released. The paperwork the Sheriff's Department received from the MDOC expressly instructed that plaintiff was to be returned to MDOC custody regardless of the outcome of his hearing. In light of this instruction from the MDOC, Deputy Horton advised Judge Thomsen that he did not believe he could release plaintiff. Judge Thomsen agreed that the MDOC should be contacted for guidance prior to releasing plaintiff. Deputy Horton contacted the MDOC regarding the order to release plaintiff and was informed that the State of Louisiana had placed a "detain and hold" on plaintiff due to charges pending in Tangipahoah Parish, Louisiana. As a result of the "detain and hold" from Louisiana, the MDOC specifically instructed the Stoddard County Sheriff's Department to hold plaintiff on the Louisiana warrant. Pursuant to RSMo § 221.510.3, Deputy Horton was required to hold plaintiff until otherwise instructed. Plaintiff was released as soon as Deputy Horton was advised that the State of Louisiana had lifted its hold on plaintiff.

Under these circumstances, there is no evidence that Deputy Horton or Sheriff Hefner were deliberately indifferent. It was reasonable for Deputy Horton and Sheriff Hefner to hold plaintiff for the twenty-eight hour period at issue in light of the instructions from the MDOC, the requirements of RSMo § 221.510, and the felony charges pending in Louisiana. The undisputed facts surrounding plaintiff's detention certainly do not evidence "criminal recklessness." Lund, 427 F.3d at 1127. Thus, plaintiff has failed to demonstrate a violation of his Fourteenth Amendment rights, and defendants Horton and Hefner are entitled to summary judgment on Count XIII of plaintiff's Complaint.

Defendants Horton and Hefner also contend that they are entitled to qualified immunity. Because the court has found that Defendants Horton and Hefner are entitled to summary

judgment on the merits of plaintiff's § 1983 claims, the court need not reach a conclusion on whether defendants are shielded by qualified immunity.

## IV. Motion for Summary Judgment of Defendants Roxanne Cook and Catherine Rice (Doc. No. 67)

In Count VIII, plaintiff asserts a claim against Defendant Roxanne Cook pursuant to § 1983, alleging that Defendant Cook violated plaintiff's rights under the Fourth Amendment and Fourteenth Amendment in arresting him without probable cause on May 15, 2008. Plaintiff also alleges a state law action for false arrest against Defendant Roxanne Cook. In Count XI, plaintiff asserts a claim against Defendant Catherine Rice pursuant to § 1983, alleging that Defendant Rice conspired to violate plaintiff's rights under the Fourth Amendment and the Fourteenth Amendment. Plaintiff also asserts a state law negligence claim against Defendant Rice in Count XII. Plaintiff seeks to recover damages from the individual defendants acting in their official and individual capacities.

In their Motion for Summary Judgment, defendants argue that Defendants Roxanne Cook and Catherine Rice are entitled to Eleventh Amendment Immunity on plaintiff's official capacity claims. Defendants argue that they are entitled to qualified immunity on plaintiff's individual capacity clams. Defendants also contend that plaintiff's constitutional claims fail on their merits. Defendants argue that this court should not take supplemental jurisdiction over plaintiff's state law claims. Defendants argue that, should the court address plaintiff's state law claims, these claims fail on their merits, and they are barred by the doctrine of official immunity and the public duty doctrine.

### A. Plaintiff's § 1983 Claims Against Defendants Cook and Rice

As an initial matter, the undersigned notes that, while plaintiff has alleged § 1983 claims against Defendants Cook and Rice both in their individual and official capacities, plaintiff has not disputed that Defendant Roxanne Cook is entitled to Eleventh Amendment immunity on plaintiff's official capacity claims. Further, plaintiff argues that Defendant Catherine Rice is sued only in her individual capacity. Thus, the court will only address plaintiff's individual capacity claims.

## 1.    Defendant Roxanne Cook

Plaintiff argues that Defendant Roxanne Cook, a probation and parole officer employed by the Missouri Department of Corrections, violated his Fourth Amendment and Fourteenth Amendment Due Process rights when she issued a probation revocation warrant without probable cause on May 15, 2008.

The Fourth Amendment clearly establishes the right of citizens not to be arrested without probable cause. Kehl v. Burtis, 173 F.3d 646, 649 (8th Cir. 1999). An arrest "is reasonable under the Fourth Amendment when there is probable cause to believe that a criminal offense had been or is being committed." Devenpeck, 543 U.S. at 153. Whether an arrest is constitutionally valid depends on whether, "at the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." Beck v. State of Ohio, 379 U.S. 89, 91 (1964).

Plaintiff contends that Defendant Cook did not have probable cause to believe plaintiff had committed a crime, and, therefore, her arrest warrant and the subsequent arrest of plaintiff was unlawful. Plaintiff's argument rests on his contention that he was not guilty of the underlying

offense of violating an order of protection that led to his probation.  Plaintiff claims that he

informed Defendant Cook that he had not been in violation of the Full Order of Protection under

RSMo § 455.060, and that he was therefore innocent of the charges that led to his probation.

The court finds that Defendant Cook had probable cause to issue an arrest warrant for a

probation violation.  Plaintiff pled guilty to a felony charge of violating an order of protection on

May 7, 2008.  Plaintiff received a suspended imposition of sentence and was placed on five years

probation.  A special condition of his probation was that plaintiff not be in contact, directly or

indirectly, with Ann Gibson or be at or near the proximity of her premises which she occupies,

except as authorized by a supervising probation officer.  (Def's Ex. E, p. 5).  Defendant Cook was

assigned to supervise plaintiff on probation.  Plaintiff met with Defendant Cook on May 15, 2008,

at the Probation and Parole Office in Dexter, Missouri, at which time he admitted to having

contact with Ann Gibson.  Plaintiff told Defendant Cook he would continue to contact Ms.

Gibson, and that there was no court or probation officer that would keep him from contacting Ms.

Gibson.  Based on this admitted violation of a special condition of probation, Defendant Cook,

pursuant to statutory authority, caused a warrant to issue for the probation violation.  See RSMo

§ 217.722.1.  Defendant Cook contacted the Police Department and asked for an officer to come

to the Dexter Office of Probation and Parole.  An officer arrived and plaintiff was placed under

arrest for violating his probation.

Plaintiff does not dispute that he violated the special condition of his probation by

contacting Ms. Gibson, nor does he dispute that he admitted he would continue to violate his

probation.  Rather, plaintiff contends that the special condition of his probation that he not be in

contact with Ann Gibson was not necessary to ensure that he did not violate the law as he did not

- 34 -

violate the law in the first place. As a probation officer, however, Defendant Cook was authorized to issue a warrant for the arrest of plaintiff if she had probable cause to believe that plaintiff had violated a condition of probation. See RSMo § 217.722.1. At the time Defendant Cook issued the arrest warrant, plaintiff had pled guilty to the underlying offense, and had admitted to violating the special conditions of his probation. Even if plaintiff was subsequently found innocent of the underlying charge, Defendant Cook had probable cause to believe plaintiff violated the special condition of his probation on May 15, 2008. Thus, Defendant Cook did not violate plaintiff's Fourth Amendment rights.

Plaintiff also alleges that defendant's actions amounted to a violation of his substantive due process rights under the Fourteenth Amendment. Plaintiff's claims of a substantive due process violation based on his arrest without probable cause is unavailing to the extent it mirrors plaintiff's Fourth Amendment claims. "Where a particular Amendment 'provides an explicit textual source of constitutional protection against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989). See also Smithson v. Aldrich, 235 F.3d 1058, 1064 (8th Cir. 2000) (claims of arrest without probable cause properly addressed under a Fourth Amendment analysis).

Accordingly, Defendant Cook is entitled to summary judgment on Count VIII.

**2.	Defendant Catherine Rice**

Plaintiff alleges that Defendant Catherine Rice, a state public defender, conspired with state actors to violate plaintiff's Fourth Amendment rights. Defendant contends that she is

entitled to summary judgment because plaintiff has failed to establish any facts which support his claim that Defendant Rice conspired with other state actors to violate plaintiff's constitutional rights.

To prove a conspiracy claim under § 1983, plaintiff must show (1) that a defendant conspired with others to deprive him of constitutional rights, (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy, and (3) that the overt act injured plaintiff. White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008). "The question of the existence of a conspiracy to deprive the plaintiff[ ] of [his] constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims." Id. at 816. "The plaintiff is additionally required to prove [,however,] a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." Id. at 814.

To avoid summary judgment, the plaintiff must allege with particularity and demonstrate with specific material facts that the defendants reached an agreement. City of Omaha Employees Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989); Reasonover v. St. Louis County, Missouri, 447 F.3d 569, 582 (8th Cir. 2006). While those allegations may include circumstantial evidence, plaintiff must point "to at least some facts that would suggest that [defendants] reached an understanding to violate [his] rights." City of Omaha Employees Betterment Ass'n, 883 F.2d at 652; Reasonover, 447 F.3d at 582.

In his Response, plaintiff argues that he has presented adequate circumstantial evidence that the "individuals involved in this prosecution communicated prior to Mr. Gibson's incarceration." (Doc. No. 86, p. 15). Plaintiff contends that, "despite that communication, no

one ever raised the fact that there was an inadequate factual and legal basis for his conviction."
(Id. at p. 15-16). Plaintiff argues that he repeatedly advised Ms. Rice as well as the arresting officers, the prosecutors, his jailers, and the judges that he was innocent. Plaintiff contends that he asked Ms. Rice to file a motion to set aside his misdemeanor guilty plea, and a motion to dismiss the felony charge, but she did not. Plaintiff argues that Defendant Rice admits that she "engaged in conversations with the prosecuting attorney and the judge, including plea negotiations, leading up to the guilty plea and probation revocation." (Id. at 16). Finally, plaintiff contends that Defendant Rice was aware of the existence of RSMo § 455.060, but never raised it in any proceeding. (Id.).

The undersigned finds that plaintiff has failed to point to facts sufficient to suggest Defendant Rice reached an understanding with the prosecutor or other state actors to violate his constitutional rights. While it is true that plaintiff may rely on circumstantial evidence, plaintiff has failed to present any evidence, circumstantial or otherwise, of a meeting of the minds between Defendant Rice and the state actors to violate plaintiff's constitutional rights. Plaintiff's only allegation as to any communication between Defendant Rice and the state actors was that Defendant Rice "engaged in conversations with the prosecuting attorney and the judge, including plea negotiations, leading up to the guilty plea and probation revocation." (Id. at 16). The fact that Defendant Rice engaged in plea negotiations with the prosecutor does not establish a meeting of the minds to violate plaintiff's constitutional rights. Thus, Defendant Rice is entitled to summary judgment on plaintiff's § 1983 conspiracy claim.

As noted above, plaintiff also contends that he asked Defendant Rice to file a motion to set aside his misdemeanor guilty plea, and a motion to dismiss the felony charge, which she did

not do.  These statements are supported solely by the Affidavit of Plaintiff Travis Gibson.  (Pl's Ex. 2).  Defendant Rice disputes these allegations, and requests that the court strike the Affidavit of Plaintiff Travis Gibson.  Plaintiff's allegations that Defendant Rice did not file the motions he requested her to file, however, do not support a meeting of the minds between Defendant Rice and the state actors and were not considered by the court.  Thus, Defendant Roxanne Cook and Catherine Rice's Motion to Strike Affidavit of Plaintiff Travis Gibson (Doc. No. 104) will be denied as moot.

Defendants Cook and Rice also contend that they are entitled to qualified immunity.  The court has found that Defendants Cook and Rice are entitled to summary judgment on the merits of plaintiff's § 1983 claims.  Thus, the court need not reach a conclusion on whether defendants are shielded by qualified immunity.

## V. State Law Claims

As noted above, plaintiff asserts state law claims in Counts II, V, VII, IX, X, XII, and XIV.

District courts "may decline to exercise supplemental jurisdiction over" a state law claim if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Because Defendants' motions for summary judgment are granted, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims, and will dismiss those claims without prejudice.  See id.; United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (if federal claims are dismissed before trial, remaining state claims should also be dismissed); Hassett v. Lemay Bank & Trust Co., 851 F.2d 1127, 1130 (8th Cir. 1988) (where federal claims have been dismissed, district courts may decline jurisdiction over pendent state claims as a "matter of

discretion").

In light of the court's dismissal of plaintiff's state law claims, the court will deny Defendant Catherine Rice's Motion to Exclude the Testimony of Plaintiff's Expert Joel Schwartz (Doc. No. 69) as moot, as it relates exclusively to plaintiff's state law negligence claim.

Accordingly,


**IT IS HEREBY ORDERED** that Defendant Briney Welborn's Motion for Summary Judgment (Doc. No. 53) be and it is **granted**.  A separate Summary Judgment will be entered on this date.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment of Defendants Rick Cook, Josh Benton, Jeff Mitchell and the City of Dexter (Doc. No. 58) be and it is **granted**. A separate Summary Judgment will be entered on this date.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment of Defendants Carl Hefner and Tommy Horton (Doc. No. 61) be and it is **granted**.  A separate Summary Judgment will be entered on this date.

**IT IS FURTHER ORDERED** that Defendants Roxanne Cook and Catherine Rice's Motion for Summary Judgment (Doc. No. 67) be and it is **granted**.  A separate Summary Judgment will be entered on this date.

**IT IS FURTHER ORDERED** that Defendant Catherine Rice's Motion to Exclude the Testimony of Plaintiff's Expert Joel Schwartz (Doc. No. 69) be and it is **denied as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Certain Paragraphs of Defendants Rick Cook, Josh Benton, Jeff Mitchell, the City of Dexter, Missouri, Carl Hefner and

Tommy Horton's Material Facts, or In the Alternative, Plaintiff's Objections to Said Paragraphs (Doc. No. 80) be and it is **denied**.

       **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Certain Paragraphs of the Statement of Uncontroverted Facts of Defendant Joe Briney Welborn (Doc. No. 83) be and it is **denied as moot**.

       **IT IS FURTHER ORDERED** that Defendants Roxanne Cook and Catherine Rice's Motion to Strike Affidavit of Plaintiff Travis Gibson (Doc. No. 104) be and it is **denied as moot**.

       **IT IS FINALLY ORDERED** that Counts II, V, VII, IX, X, XII, and XIV be and they are **dismissed without prejudice**.

Dated this 29th day of April, 2013.

_Lewis M. Blanton_
_____
LEWIS. M. BLANTON
UNITED STATES MAGISTRATE JUDGE